IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SONIA RUSSELL, | ) | CASE NO. 8:08CV292 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| AMERICAN AIRLINES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff's Motion to Compel (Filing No. 27) and Defendant's Motion for Summary Judgment (Filing No. 31). As set forth below, the Motion to Compel is denied and the Motion for Summary Judgment is granted.

### I. MOTION TO COMPEL

On November 17, 2008, the court entered a Progression Order. (Filing No. 12.) The Progression Order set the deadline for serving interrogatories and requests for production or inspection of documents as December 15, 2008, and the deadline for filing motions to compel as January 22, 2009. (*Id.*) The Progression Order also reminded the parties that they must comply with NeCivR 7.1(i) prior to filing any motion to compel. (*Id.*) On January 7, 2009, Plaintiff Sonia Russell ("Russell") filed a Certificate of Service stating that she mailed Interrogatories to counsel for Defendant American Airlines ("AA") on January 6, 2009, nearly one month after the deadline for serving such discovery. (Filing No. 17.)

On February 23, 2009, more than one month after the deadline for doing so, Russell filed her Motion to Compel. (Filing No. 27.) In her Motion, Russell relies on her pro se status to excuse her failure to meet the deadlines set forth in the Progression Order. (*Id.*) However, Russell never requested additional time in which to serve discovery or file a

motion to compel. (*See* Docket Sheet.) Further, there is nothing before the court showing that Russell complied with NECivR 7.1(i) prior to filing her Motion to Compel. Russell understood the Progression Order, as she sought additional time for her deposition and to respond to the Motion for Summary Judgment. (Filing Nos. 19 and 34.) In light of these facts, the Motion to Compel is denied.

## II. MOTION FOR SUMMARY JUDGMENT BACKGROUND

Russell filed her Complaint in this matter on July 9, 2008 against one Defendant, AA. (Filing No. 1.) Liberally construed, Russell's Complaint alleges that AA discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964.

AA filed its Motion for Summary Judgment on March 23, 2009. (Filing No. 31.) Along with its Motion, AA also filed an Index of Evidence and Brief in Support. (Filing Nos. 32 and 33.) Russell sought additional time to respond, which the court granted, permitting Russell to file her Response to the Motion for Summary Judgment (Filing No. 36), Index (Filing No. 37), and Affidavit (Filing No. 38). AA thereafter filed its Reply Brief. (Filing No. 40.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be

2

deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

AA submitted a statement of material facts in accordance with the court's Local Rules. Russell submitted her Index, which consists of numerous unsworn "Declarations" signed by Russell. (Filing No. 37.) These Declarations are not supported by any evidence. Rather, Russell's Index generally restates the allegations of the Complaint and, in bullet-point fashion, lists her disagreements with the evidence submitted by AA. (*Id.*) On the whole, Russell's submissions to the court do not constitute admissible evidence and are not a "concise response to" AA's submission. The Index does not comply with the Federal Rules of Civil Procedure or the Local Rules of this court. Although the court must construe a pro se litigant's pleadings liberally, documents which do not comply with the Federal Rules of Civil Procedure and this court's local rules may not be considered.[1] In light of this, the court adopts the following undisputed material facts, the majority of which were set forth by AA in its Brief.

---

[1] Notably, the majority of Russell's submissions consist of broad questions rather than admissible evidence, and, even if properly authenticated, would have no bearing on the court's decision. For example, Russell's Index refers to AA's Exhibits 9 and 10 and states "[i]f the form was given by American Airlines and filled out how is it insufficient?" (Filing No. 37 at CM/ECF p. 10.) Referring to AA's Exhibits 28 and 29, Russell asks "[i]f job assignments were not based on race, and then what was it based on?" (*Id.* at CM/ECF p. 18.)

### III. RELEVANT UNDISPUTED FACTS

<u>Russell's Hiring and Review of Policies</u>

1. AA hired Russell for the position of airport ticket/gate agent ("Agent") on December 9, 2006.

2. After her hiring, Russell accessed AA's website which includes policy information regarding new employees' probationary period, the fact that employees are "at-will" employees and the need for employees to attend required training.

3. Russell accessed AA's website from her home, which allowed her to access AA's policies. While Russell cannot remember whether she accessed this policy information prior to hiring, she had the attendance policy information no later than January 23, 2007.

<u>Russell's Agreement to the Essential Functions of the Job</u>

4. On November 14, 2006, prior to Russell starting employment with AA, she read and signed a written job description from AA outlining the essential functions of the job.

5. Russell knew she could be terminated if she had three consecutive days of absence without advising the company and providing a sufficient excuse.

6. Russell agreed to work overtime on short notice in emergencies or when operationally necessary.

7. Russell knew that if a plane came in late because of a weather emergency, she would be expected to stay beyond her scheduled shift to accommodate that flight.

8. Russell agreed to work nights, weekends and holidays.

Russell's Training Requirements

9. AA's structured course training held at Flagship University ("FSU") is held once or twice per month in Texas and requires attendance at all consecutive sessions over a period of 10 to 14 days. FSU training is mandatory and essential to training a new employee to perform the essential functions of the Agent's job.

10. Without the FSU training, an Agent is not sufficiently trained to perform the essential elements of that job.

11. At the time of hiring, Russell knew that she would be required to attend FSU training which would last approximately two weeks.

12. Russell was scheduled to attend FSU training but she cancelled her attendance at the training.

Russell's Tasks Without FSU Training

13. Russell never performed the customer ticketing function on her own.

14. An employee who had completed training had to direct Russell as to how to perform the customer ticketing function.

15. Russell only completed the bag pulling function on her own.

16. Without FSU training, Russell could perform a minimal part of the baggage department requirement and was not fully trained to handle the complete baggage position.

Russell Has Not Provided Evidence that Job Assignments Were Race-Based

17. Russell cannot say that white employees performing her same job did not have their assignments changed or were not required to work flexible hours.

18. Russell cannot provide the names of white co-employees who were favored by not having their scheduled changed on short notice.

19. On only one occasion did Russell learn that a white employee was scheduled to work in baggage but was actually not sent to work in baggage.

20. Russell did not learn what duties had been assigned to her until she checked a computer scheduling page close to the time she was discharged.

21. Russell does not know AA's business rationale for scheduling particular individuals to particular jobs.

22. Russell does not know who made up the schedules.

23. Russell told AA employee and general manager Ken Cody ("Cody") that she was scheduled to the baggage area "consecutively," but she did not complain that she was sent to baggage more than white employees.

Russell was Counseled Regarding Her Job Performance

24. Russell recalls several counseling sessions with the general manager.

25. Russell recalls that she had two counseling sessions with Cody where co-workers were also in attendance.

Russell's Absences

26. Russell never worked a shift at AA after February 13, 2007, following her presentation of a doctor's note requesting that she take a leave of absence.

27. Russell's doctor, Dr. Chupp, understood her job requirements and submitted a note by fax to AA Medical on February 16, 2007 in order to excuse Russell's absence.

28. AA Medical concluded that Dr. Chupp's faxed note did not sufficiently explain Russell's absence.

29. Russell does not know who at AA Medical made the determination that Dr. Chupp's faxed note was insufficient to excuse her absences.

30. Dr. Chupp submitted a medical report faxed to AA Medical on February 22, 2007, in response to a written request by AA to Russell dated February 19, 2007.

Cody's February 23, 2007 Letter to Russell

31. Russell received a letter dated February 23, 2007, from Cody, general manager, stating that the medical information submitted to AA Medical was insufficient.

32. Cody directed Russell to meet with him February 26, 2007, at 1:30 p.m. to discuss her employment status.

33. Cody told Russell that if she did not meet with him, she could be discharged.

34. Russell told Cody that she would not meet with him and, in fact, did not meet with him, because her attorney was not available to attend.

35. Russell has not identified any AA policy or practice authorizing or permitting an employee to be accompanied by an attorney at internal job counseling, disciplinary, or other meetings.

36. Russell told Cody that she would no longer discuss anything regarding her work status with him.

37. Russell's position is that she had a right to refuse Cody's direction to her to meet with him to discuss her continued employment.

38. Russell believes that the tone of the supervisor's request justifies a refusal by a subordinate to follow the directive.

Russell's Termination

39. Cody sent a letter to Plaintiff dated February 26, 2007, terminating her employment and setting out the reasons for that termination.

7

40. Russell understands that AA believed that her performance was not satisfactory and that the medical explanations for her absences and cancellation of FSU training and her return to work were not sufficient.

41. Russell has no knowledge of what facts AA considered in scheduling employees to various assignments.

Russell's Discrimination Claims

42. Russell filed a charge of discrimination based on race and color against AA on April 26, 2007.

43. Russell does not have any information based on observation or experience to indicate that white employees received better treatment than she did.

44. Neither Russell's agency charge nor Complaint in this matter allege that Russell was subject to harassment or racial comments to or about her.

45. Russell cannot remember the context or the name of the person who she now alleges uttered racial comments to or about her.

46. Russell's allegations that white employees received better treatment than she did is based on anecdotal, word of mouth assertions.

47. Russell cannot remember if she complained about the alleged racial comments in 2006, cannot remember the exact comment or the nature of the comment, and cannot remember when the comment was made.

(Filing Nos. 32 and 33 at CM/ECF pp. 3-8.)

## IV. ANALYSIS

### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### B.     Russell's Discrimination Claims

Russell claims that she was not given appropriate training, that she was assigned to less-desirable work assignments, and that she was ultimately terminated because of her race in violation of Title VII of the Civil Rights Act of 1964. (Filing No. 32-2, Attach. 1, at CM/ECF p. 7.) For the reasons stated below, Russell's discrimination claims fail because she has not set forth a prima facie case of discrimination.

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment, a plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). Claims premised on indirect evidence are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

       1.     Direct Evidence

Russell did not include any claims relating to "direct evidence" of racial discrimination in her agency charge or in her Complaint. (Filing Nos. 1 and 32-3, Attach. 2, at CM/ECF pp. 1-3.) Indeed, the first time Russell raised any direct evidence claims was at her deposition. As recently set forth by the Eighth Circuit:

> When relying on direct evidence to avoid summary judgment, the plaintiff must provide evidence: "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually

> motivated[ ] the adverse employment action. Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial."

*King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008) (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). Further, direct evidence "may include evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions." *Id.* (quotations omitted). However, a plaintiff cannot survive summary judgment simply by requesting that a court "extrapolate racial animus from statements . . . without providing any factual support or context for such speculation." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) ("While we are required to make all reasonable inferences in favor of the nonmoving party in considering summary judgment, we do so without resort to speculation.") (citation omitted).

  Here, Russell testified at her deposition that she heard general racial comments "made to [her] and about [her], but could not identify the speaker of the comments, when they occurred, or what was said. (Filing No. 32-2, Attach. 1, at CM/ECF pp. 7-8.) The only thing Russell does recall is that the alleged comments were not made at "about the same time" as her termination. (*Id.* at CM/ECF p. 8.) Viewing the evidence in the light most favorable to Russell, she has failed to provide this court with any factual support or context for any of the alleged racial comments. Indeed, Russell cannot tell the court when the statements occurred, what was said, who said them, or any other information about the racial comments. As such, Russell has failed to meet her burden of showing that any racial

comments had a "direct link" to her training, job assignments, or termination. Because Russell offers no admissible evidence of direct discrimination, the court will analyze her claims under the *McDonnell Douglas* framework.

### 2.   Indirect Evidence

Under the *McDonnell Douglas* framework, Russell bears the initial burden of proving a prima facie case of discrimination. *Id.* If she establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to AA to articulate a legitimate nondiscriminatory reason for its employment decision. *Bearden,* 529 F.3d at 831. If AA articulates a nondiscriminatory reason, the burden returns to Russell to show that the proffered reason is pretextual. *Id.* at 831-32 (citing *Brannum v. Missouri Dep't of Corr.,* 518 F.3d 542, 548 (8th Cir. 2008)). However, the ultimate burden of persuasion remains with Russell throughout the case.

#### a.   Prima Facie Case

Summary judgment may be entered in a Title VII action "if any essential element of the *prima facie* case is not supported by *specific facts* sufficient to raise a genuine issue for trial." *Brower v. Runyon,* 178 F.3d 1002, 1005 (8th Cir. 1999) (emphasis added). Accordingly, to set forth a prima facie case, Russell must establish that: (1) she is a member of a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) her discharge occurred in circumstances giving rise to an inference of discrimination. *Johnson v. AT & T Corp.,* 422 F.3d 756, 761 (8th Cir. 2005). Construing the evidence submitted by AA in a light most favorable to Russell, the court finds that the undisputed evidence establishes elements one and three of Russell's prima facie case.

Thus, if she can show that she was qualified for her position and can show that the circumstances give rise to an inference of discrimination, Russell has satisfied the first stage of the *McDonnell Douglas* analysis. However, Russell has not done so.

As set forth above, Russell was hired as an Agent. To be qualified for the Agent position, Russell was required to attend mandatory FSU training. Russell knew these requirements from the time she was hired, but she never attended the FSU training, which prevented her from performing certain Agent tasks. AA scheduled Russell for the training, but she ultimately cancelled her attendance. Russell had other problems meeting the requirements of the Agent position, and was counseled about her job performance and treatment of co-workers on several occasions.

After February 13, 2007, Russell stopped coming to work, citing a medical problem. (Filing No. 32-15, Attach. 14.) Her doctor faxed a note, and later an incomplete AA Medical form to AA's Medical Department. (Filing Nos. 32-10, Attach. 9 and 32-11, Attach. 10.) However, AA informed Russell that both of these items from her doctor were insufficient to excuse her absences. General manager Cody requested that Russell attend a meeting with him on February 26, 2007. (Filing No. 32-13, Attach. 12, at CM/ECF p. 1.) Russell did not attend the meeting and was terminated for "insubordination." (Filing No. 32-15, Attach. 14.) There is no evidence before the court that Russell's race figured into her job assignments, training, or the decision to terminate her. The evidence before the court instead shows that Russell was terminated due her failure to perform her job adequately, failure to attend mandatory training, failure to report for work for several days, and failure to attend a meeting with the general manager. In light of the undisputed facts, Russell has failed to establish the requisite elements of her prima facie case.

### b. Similarly-Situated Allegations

A review of all of the evidence properly before the court shows that Russell's allegations of race discrimination may relate to other employees who were similarly situated but were treated differently with respect to job assignments. However, "the test for whether employees are similarly situated to warrant a comparison to the plaintiff is rigorous." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). Indeed, Russell has the burden to show that the comparators are similarly situated in all relevant respects. *Riser v. Target Corp.*, 458 F.3d 817, 822 (8th Cir. 2006) (denying Title VII race discrimination claim where the plaintiff failed to show that comparators had similar jobs at similar locations and were cited for the same "shortcomings" as the plaintiff but were not disciplined). Indeed, Russell and her comparators must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *EEOC v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2003). Russell has submitted no such evidence. Rather, the undisputed facts before the court do not clearly indicate who the comparators are, or whether they had similar training or similar job assignments. To the extent Russell's claims of race discrimination are based on "similarly situated" individuals, her claims fail. Because Russell has submitted no evidence that her termination raised an "inference of discrimination," she has not set forth a prima facie case and summary judgment in favor of AA is warranted.

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (Filing No. 31) is granted;

2. A separate Judgment will be entered in accordance with this Memorandum and Order; and

3. Plaintiff's Motion to Compel (Filing No. 27) is denied.

DATED this 23rd day of July, 2009.

                BY THE COURT:

                s/Laurie Smith Camp
                United States District Judge